Daniel, J.
 

 The parties have taken depositions, and set down the cause for a hearing, and it now comes on to a hearing. The testimony of Robert Porter expressly establishes the agreement as stated in the bill, to wit, that Boswell and his wife were to have the slave Rose and her increase during
 
 *251
 
 their lives, and then the said slaves were to be the property of the plaintiff. This testimony of Porter is supported by that of John Stile and John Jones, who depose that they had frequently heard R. Boswell say, that after the death of his wife and himself, Rose and her increase would be the property of the plaintiff — and that he, Boswell, made such remarks within a year or so before he died. And there is no evidence in .the cause that Boswell ever set up an absolute right to Rose and her children. There is proof that Boswell had, in the year 1803, purchased Alexander Gray’s share, and that he then agreed, in consideration, that the plaintiff then let Boswell have the plaintiff’s share for the life of Boswell and his wife, or the survivor of them ; that after the death of himself and wife, Rose and her increase should be the property of the plaintiff. Secondly, the contract between the plaintiff and Boswell, being executory in its nature, and not to be completely executed until the death of Boswell and his wife, the rule of law insisted on by the defendants does not apply, to wit, that a conveyance for life of a chattel was a conveyance of the whole interest. Thirdly, the act of limitations does not bar, as it appears that R. Boswell made his will in August, 1836; and this bill was filed at February. Term, 1839. Fourthly, we are of the opinion, that the slave Alexander was conveyed in 1823 by Boswell to the plaintiff, but not in satisfaction of the demand now set up by the bill. Alexander was not one of the children of Rose, nor had the plaintiff then any right to press this demand upon Boswell, and there is proof by the witness, Porter, that the plaintiff and a slave he owned named Sambo, before he left this State for Tennessee, worked for Boswell for several years. There is a witness (A. Spratt) examined for the defendants, (his daughter married the son of R. Boswell, andhischil-. dren are some of the legatees, under R. Boswell’s will of these very -slaves;) he says that he and the plaintiff had a conversation, when he came in from Tennessee to commence this suit, and he asked the plaintiff if he had not received a negro boy of A. Boswell in satisfaction of this claim; the
 
 *252
 
 plaintiff said, tbat he had got a negro boy in satisfaction his claim, as the witness understood. And he further said, that he would then have signed any instrument of writing, if any had been drawn up, in full satisfaction of his claim against Reuben Boswell, an d that he never would have troubled the defendants if hehadnotbeenurgedtoit by his son and son-in-law. We think that this witness must be mistaken, if he understood the claim spoken of by the plaintiff in that conversation, to be this claim; for in the year 1823, when the boy was purchased for $300, as is expressed in the bill of sale, the one-half of the price of Rose and her increse (upwards of four) must have been considerably larger — the plaintiff, if he talked of a claim at all, must have meant some claim
 
 he then had
 
 a right to urge against Boswell; there is no writing here exhibited evidencing exactly what claim was paid when the hoy Alexander was sold. And upon the other point in his evidence, it may be true, that the plaintiff, an old man residing in Tennessee, said that he would no't have brought this suit in equity, if he had not been urged to it by his son and son-in-law; but that does not prove that he had no right to commence such a suit. He did commence the suit — and and all the circumstances shew that Pratt has intentionally mistated this conversation, or that he is mistaken in what was said and meant at the time by the plaintiff. There must, therefore, be a decree declaring that the plaintiff is entitled under the agreement between him and Boswell to one half of the slave Rose and her increase, and to have partition made of them; and there must be a decree, that the slaves be produced by the parties in whose possession they are, for the purpose of partition, and that a division be made accordingly; and for an account of the profits, with just allowances to the several defendants, if the plaintiff choses to have such account.
 

 Per Curiam, Decree accordingly.